IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| RALPH LAVERDURE, | Cause No. CV 25-78-GF-DWM |
| Plaintiff, | |
| vs. | ORDER |
| CASCADE COUNTY DETENTION CENTER OFFICER TROCHIE, CAPTAIN KANDAR, DR. MOLNAR, AND CASCADE COUNTY SHERIFF JESSE SLAUGHTER, AND UNDERSHERIFF SCOTT VAN DUKEN, | |
| Defendants. | |

Ralph LaVerdure filed a complaint alleging violations of his civil rights. (Doc. 2.) His Complaint failed to state a claim for relief, but he was granted leave to amend, (Doc. 9.), which he has done. (Doc. 10.) The Amended Complaint may state claims for access to the courts and denial of medical care; LaVerdure's other claims are dismissed.

## I. STATEMENT OF THE CASE

LaVerdure is a convicted state inmate held at Cascade County Detention

1

Center, Great Falls, Montana. (Doc. 2 at 4.) The Amended Complaint names Cascade County Detention Center Officer Trochie, Captain Kandar, Dr. Molnar, and Cascade County Sheriff Jesse Slaughter and Undersheriff Scott Van Duken. (Doc. 10 at 2 – 3, and 9.)

LaVerdure's Amended Complaint elaborates on the claims he raised in his original. LaVerdure's first claim relates to the possibility (or frequency) of women detention officers and volunteers in the jail being able to see male inmates in the shower. (Doc. 10 at 9 – 13.)

LaVerdure's second claim relates to his access to the courts. He claims that he has been unable to get various forms needed for his court actions. Default was entered against him in his divorce, because he was not able to respond on time, and his application to the sentence review board went missing and was never filed. He also says that he is only able to communicate with his attorney via "kites that are read and printed." (Doc. 10 at 14 – 17.)

LaVerdure's third claim stems from his failure to obtain treatment for his hepatitis C. In March, 2024, LaVerdure was beginning treatment outside of jail. When he arrived at Cascade County Detention, he was charged for his care, and he was unable to acquire the necessary drugs, because the jail required him to get someone outside to pick up the drugs from the pharmacy. (Doc. 10 at 18 – 20.) He was unable to get someone to deliver the medication. Apparently, because he was

2

unable to complete the treatment the first time, he was not allowed to get treatment again and still suffers from hepatitis. (Doc. 10 at 19.)

LaVerdure's fourth claim is related to hair clippers. The jail does not allow prisoners to have razors, so there are hair clippers/shavers available to everyone. In September, 2025, an inmate had damaged the clippers, so they were removed for 30 days. (Doc. 10 at 21 – 22.)

LaVerdure's fifth claim is that there is a work release type program for which he theoretically should be qualified, but he is not able to participate. (Doc. 10 at 23 – 24.)

LaVerdure's final claim is that the detention center unfairly removed tablets from the inmates. One inmate broke his, so everyone lost theirs for some amount of time. LaVerdure uses his, in part, for his religious practice, so he was temporarily without his religious resources. He had also paid money for various things on the tablet and was not reimbursed for the loss of access. (Doc. 10 at 25 – 26.)

## II.    SCREENING STANDARD

LaVerdure is an inmate proceeding in forma pauperis, so the Court must review his Complaint under 28 U.S.C. §§ 1915 and 1915A. Section 1915A(b) requires the Court to dismiss a complaint filed by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to

state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A case is malicious if it was filed with the intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf.* Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

## III.   SCREENING ANALYSIS

### A.  Privacy in the Showers

LaVerdure alleges that women officers and volunteers are occasionally able to see men in the showers. LaVerdure specified a date, July 19, 2025, on which a female officer was apparently on duty. (Doc. 10 at 9.) However, nowhere does he state that he was in the shower, or that there is some time when he has been in the shower and observed by a women officer.

4

Incarcerated prisoners retain a limited right to bodily privacy, particularly in front of strangers of the opposite sex. *Grummett v. Rushen,* 779 F.2d 491, 494 (9th Cir.1985); *see also Cumbey v. Meachum,* 684 F.2d 712, 714 (10th Cir.1982) ("Although the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether.") An impingement on an inmate's privacy is analyzed using *Turner v. Safley's* rational relationship test to determine whether the situation at Cascade County Detention Center is "reasonably related to legitimate penological interests." *Michenfelder v. Sumner*, 860 F.2d 328, 333–34 (9th Cir. 1988) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987).)

To determine if a prison regulation (or, in this case, a physical set up) can survive a constitutional challenge, we consider whether (1) there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "there are alternative means of exercising the right"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources"; and (4) there is an "absence of ready alternatives[.]" *Id.* at 89–90 (internal quotations and citations omitted).

The Ninth Circuit has concluded that inmates had not demonstrated that "restricted observations by members of the opposite sex [were] so degrading as to require intervention by this court." where "the positions to which they are assigned

require infrequent and casual observation, or observation at a distance," *Grummett v. Rushen,* 779 F.2d 491, 494 (9th Cir.1985). The Constitution does not bar female guards from occasionally being present at strip searches of men or from routinely serving on shower duty in a men's prison. *Sepulveda v. Ramirez*, 967 F.2d 1413, 1416 (9th Cir. 1992). LaVerdure has failed to allege facts that suggest any viewing of inmates occurs more than in passing and at a distance. He even mentions that the women detention officers try not to look, or that there are warnings that women would be coming through. LaVerdure fails to state a claim for violation of any right to bodily privacy.

**B. Access to the Courts**

LaVerdure alleges that he was prevented by jail policy or practice from participating in his divorce proceedings and at Montana's Sentence Review Division, thus violating his right of access to the courts. The constitutional guarantee of access to the courts does not cover all potential litigation an inmate may choose to file. The right of access is narrow, encompassing direct appeals, habeas, and "civil rights actions"—*i.e.,* actions under 42 U.S.C. § 1983 to vindicate "basic constitutional rights." *Lewis v. Casey*, 518 U.S. 343, 354-5 (1996). Supreme Court precedent "...does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be

provided are those that the inmates need in order to attack their sentences, directly

or collaterally, and in order to challenge the conditions of their confinement.

Impairment of any *other* litigating capacity is simply one of the incidental (and

perfectly constitutional) consequences of conviction and incarceration." *Id.*, at

355.

LaVerdure's sentencing petition, at least, would be the type of litigation the

right of access covers. The right covers two types of claims – those that are

presently thwarted and could yet be filed, if the impediment were removed, and

those that have been lost and could not now be filed, regardless of the removal of

the impediment. *Christopher v. Harbury*, 536 U.S. 403, 413 - 414 (2002). For both

categories, a plaintiff is required to describe the lost action in the complaint.

> It follows that the underlying cause of action, whether anticipated or
> lost, is an element that must be described in the complaint, just as
> much as allegations must describe the official acts frustrating the
> litigation. It follows, too, that when the access claim […] looks
> backward, the complaint must identify a remedy that may be awarded
> as recompense but not otherwise available in some suit that may yet
> be brought. There is, after all, no point in spending time and money
> to establish the facts constituting denial of access when a plaintiff
> would end up just as well off after litigating a simpler case without the
> denial-of-access element.

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Thus, the underlying cause of

action must be addressed by allegations in the complaint sufficient to give fair

notice to a defendant, and to determine what remedy the Court might be able to

7

fashion, if any. *Christopher,* 536 U.S. at 416 (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513–515 (2002).)

To state a cause of action for access to the courts, LaVerdure must establish that he has suffered an actual injury. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis v. Casey*, 518 U.S. 343, 348 (1996) (citation and internal quotation marks omitted); *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (explaining that "[f]ailure to show that a 'non-frivolous legal claim ha[s] been frustrated' is fatal" to a claim for denial of access to legal materials) (citing *Lewis*, 518 U.S. at 353 & n.4). LaVerdure's Amended Complaint states he has "run out of time" for sentence review, which will be interpreted as that time for filing as expired. (Doc. 10 at 15.) LaVerdure does not allege that he has attempted to file out of time, so whether his time has expired is not certain. If LaVerdure's allegations are taken as true, and he attempted to file the form at least twice and was thwarted by the detention center's practices, he may state a claim for denial of access to the courts. His claim regarding his sentence review petition will be served on Cascade County, because the claim arises from a policy regarding access to the courts, and not on the individual action of a person at Cascade County Detention Center.

**C. Hepatitis C Treatment**

8

LaVerdure's medical care claims arose in 2024. It is unknown if he was a pretrial detainee at that time, or already a convicted inmate. Accordingly, this claim will be viewed through the more lenient standard that applies to pretrial detainees.

A pretrial detainee's claim for violation of the right to adequate medical care is evaluated under an objective deliberate indifference standard under the Fourteenth Amendment. *Gordon v. County of Orange*, 888 F.3d 118, 1124-24 (9th Cir. 2018). To sue an individual defendant, LaVerdure must allege facts supporting an inference that each of the following elements exists:

1.  The defendant "made an intentional decision with respect to the conditions under which the plaintiff was confined;"

2.  "[T]hose conditions put the plaintiff at substantial risk of suffering serious harm;"

3.  The defendant "did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious;" and

4.  "[B]y not taking such measures, the defendant caused the plaintiff's injuries."

*Gordon*, 888 F.3d at 1125. Negligence is insufficient. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A "mere lack of due care" does not violate the Constitution. Rather, LaVerdure "must 'prove more than negligence but less than subjective intent – something akin to reckless disregard.'" *Castro v. County of Los Angeles*,

833 F.3d 1060, 1071 (9th Cir. 2016).

LaVerdure has identified Dr. Molnar as a defendant on his medical care claim, but the proper defendant appears to be Cascade County, for its policy regarding medical care at CCDC. LaVerdure alleges that the jail would not acquire his medication for him, but required him to have someone pick it up and drop it off. As a result of this policy, LaVerdure could not complete his treatment, and is now prevented from doing so. LaVerdure has alleged sufficient facts to state a claim against Cascade County for its medical policy.

### D.  Hair Clippers

"Indigent inmates have the right to personal hygiene supplies such as toothbrushes and soap." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996). LaVerdure does not allege he was denied all access to shaving materials or that he was forced to remain unshaven for some unacceptable time. On the facts alleged, he fails to state a claim for any violation of his constitutional rights regarding hygiene.

### E.  Work Release

LaVerdure's claims regarding work release are poorly developed. He alleges that some inmates qualify for some kind of work release or "jail alternative," or for transfer to another county. He wants to participate in one of these programs, but he does not clearly allege that he is qualified to do so, nor does he state with any

clarity that others similarly-situated to him participate. In fact, he states that he is the only person of his conviction type in Cascade County. LaVerdure does not allege that anything about his sentence is, itself, illegal. Accordingly, he fails to state a claim about his current classification or incarceration. (On the other hand, if LaVerdure believes his current sentence or incarceration is illegal, his appropriate remedy is a petition for a writ of habeas corpus and not a civil rights complaint.)

**F. Tablets**

LaVerdure alleges that he lost his tablet privileges for some amount of time due to the bad behavior of others, and that this lost cost him, spiritually as well as financially. At the time of drafting his Amended Complaint, LaVerdure had access to a tablet, but claims he feels like he might lose it for other people's actions. (Doc. 10 at 26.)

LaVerdure has not stated a constitutional claim regarding access to the tablet. He may be entitled to compensation if he has lost money as a result, but he has not alleged facts to show that he has attempted to be reimbursed, or that there is some policy that prevents it. He does not have a constitutional right of access to the tablet, without restriction. The claim will be dismissed.

**G. Individual Defendants**

42 U.S.C. § 1983 provides a civil action against a person acting under color of state law. To state a § 1983 claim against an individual, the plaintiff must

specifically identify the individual actor involved in the deprivation of his rights and the specific actions that were taken. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which the plaintiff complains." (Internal quotation marks and alteration omitted)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id.* The plaintiff must prove personal participation in the alleged deprivation of rights as "there is no respondeat superior liability under section 1983." *Bell v. Clackamas Cnty.*, 341 F.3d 858, 867 n.3 (9th Cir. 2003).

LaVerdure's two viable claims appear to relate to policies at Cascade County Detention Center, and not to discretionary acts by individuals. Accordingly, his claims will be served the County, and on Defendants Kandar and Slaughter in their official capacities, as they appear to be in charge of policy at the detention center.

## IV. CONCLUSION

28 U.S.C. §§ 1915 and 1915A require a court to dismiss a complaint that fails to state a claim upon which relief may be granted, but does not deprive the

district court of its discretion to grant or deny leave to amend. *Lopez v. Smith*, 203

F.3d 1122, 1127 (9th Cir. 2000). The Court can decline to grant leave to amend if

"it determines that the pleading could not possibly be cured by the allegation of

other facts." *Lopez*, 203 F.3d. at 1127 (*quoting Doe v. United States*, 58 F.3d 494,

497 (9th Cir. 1995)).

Accordingly, it is HEREBY ORDERED:

1.     By separate Order, LaVerdure's claims regarding access to the courts

and medical care shall be served on Defendants Cascade County, Captain Kandar,

and Sheriff Jesse Slaughter. All other claims and defendants are DISMISSED. The

Clerk of Court is directed to modify the docket accordingly.

2.     At all times, LaVerdure must immediately advise the Court of any

change of address.  Failure to file a notice of change of address may result in the

dismissal of the action for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

DATED this 16th day of December, 2025.

_____
Donald W. Molloy, District Judge
United States District Court